The Honorable Karen A. Overstreet
Chapter 11
Stalking Horse/Bid Procedures Hearing Date
and Time: December 7, 2010 at 9:30 a.m.
Response Due: December 7, 2010 (time of hearing)

Sale Hearing Date: to be determined
Sale Hearing Time: to be determined
Response Due: to be determined
Hearing Location: 700 Stewart St., Rm. 7206

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re<br><br>FREDERICK D. BERG,<br><br>Debtor | Lead Case No. 10-18668-KAO (Administratively Consolidated with Case Nos. 10-23787-KAO and 10-23755-KAO)<br><br>MOTION FOR APPROVAL OF: |
| In re<br><br>OREGON COACHWAYS, INC.<br>EIN 93-0839990<br><br>Debtor | 1. SALE, PURSUANT TO AN AUCTION, OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND BUSINESS FREE AND CLEAR OF LIENS; |
| In re<br><br>MERIDIAN TRANSPORTATION RESOURCES (CANADA), LTD.<br><br>Debtor | 2. BIDDING, NOTICE AND SALE PROCEDURES; and<br><br>3. ADDITIONAL RELIEF |

Oregon Coachways, Inc. ("*OCW*") and Meridian Transportation Resources (Canada), Ltd. ("*MTR*"), the Debtors and Debtors In Possession (OCW and MTR collectively, the "*Debtors*"), through their counsel George S. Treperinas and Karr Tuttle Campbell, move the Court for approval of (i) sale of substantially all of OCW' assets and business and MTR's "Sightline Tours of Canada" business free and clear of all liens, claims, interests and encumbrances pursuant to Bankruptcy Code §363; (ii) bidding and notice procedures; (iii) assumption and assignment of certain of Debtors'

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 1
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

executory contracts; (iv) rejection and assumption of certain of Debtors' contracts; and (iii) additional relief as described herein. This motion (the "*Sale Motion*") is supported by the Declarations of Diana K. Carey (the "*Carey Declaration*") and Eric D. Orse (the "*Orse Declaration*").

## I. FACTUAL BACKGROUND

1. Frederick Darren Berg, the sole-shareholder of both of the Debtors, filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "*Code*") in the United States Bankruptcy Court for the Western District of Washington at Seattle (the "*Bankruptcy Court*") on July 27, 2010 under the Lead Bankruptcy Case No. 10-10528-KAO (the "*Berg Case*").

2. Diana K. Carey (the "*Trustee*") was appointed Chapter 11 trustee of the Berg Case on August 19, 2010, and a Bankruptcy Court order was entered thereafter ratifying her control of the Debtors, which she continues to manage and control.

3. Each of the Debtors filed voluntary petitions (collectively, the "*Reorganization Cases*") under Chapter 11 of the Code, MTR on November 15, 2010[1], and OCW on November 16, 2010 (the former, with respect to MTR and the latter, with respect to OCW, the "*Petition Date*").

4. OCW operates a premium motor coach fleets for charter primarily in the state of Oregon and in the western United States. MTR and OCW have common ownership but operate semi-autonomously. MTR together with other affiliated companies operate a motor coach charter enterprise called "MTR Western." However, MTR also operates a side-line business operation called Sightline Tours of Canada which operation is the only portion of MTR assets proposed for sale hereunder.

---

[1] MTR, has also sought and obtained an Order of recognition of its US bankruptcy case in the Supreme Court of British Columbia, Vancouver Registry, in Bankruptcy and Insolvency under case no. S-107609 on November 19, 2010.

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 2
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

5.  The Debtors continue to operate as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Code. No trustee or examiner has yet been appointed in the Reorganization Cases, although a motion to appoint the Trustee as the trustee of each of the Debtors is pending for hearing on December 7, 2010.

6.  Prior to Berg's bankruptcy filing, Berg engaged in various activities that were detrimental to the continued success of the Debtors and their businesses, which activities have been well documented in the Berg Case and the related "*Meridian Fund Cases*[2]."

7.  In order to maximize the value of the assets of the Berg bankruptcy estate, the Trustee has sought to maintain the going-concern value of the Debtors' businesses. The Trustee has obtained offers from numerous parties for the Debtors' businesses and believes that the best prospect for successfully selling such assets is through bankruptcy process as proposed in this Motion.

8.  The primary assets of OCW are the motor coaches (the "**Motor Coaches**").

9.  OCW remains indebted to Commerce Bank of Washington N.A. (**"*Commerce*"**), as a result of a loan to Berg in January 2010, whereby Berg gave a blanket security interest over OCW assets, as well as titles to 12 OCW Motor Coaches as additional security. As of October 7, 2010, the loan indebtedness was $631,403.14 (comprised of $577,078.23 in principal, accrued interest of $10,700.17, and costs and expenses of $43,624.74). Commerce has agreed to allow OCW to use its cash collateral as part of its recent bankruptcy filing and an order authorizing this has been entered on an interim basis.

10.  A prompt sale of the assets is required in order to maintain the going concern value of the Debtors and their businesses, for the benefit of their creditors, employees, and customers.

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 3
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

11. These bankruptcy filings were the only sure way to protect and perhaps even increase the value of the Debtors' businesses. Without filing for bankruptcy, it is unlikely that the Debtors could have survived without having to terminate all employees and close the business enterprise entirely.

12. **Marketing Efforts.** Since appointment of the Trustee, the Debtors' management team, as well as the Trustee and her financial advisor, Eric Orse ("*Orse*"), have worked exhaustively to identify and contact potential buyers, and to reassure customers and vendors that the OCW brand and related business enterprise will survive the challenges which came to light in conjunction with Berg's actions and inactions relating to the Meridian Funds and OCW, as well as after the bankruptcy filing. 2 interested parties were provided with a confidentiality and non-disclosure agreement ("*NDA*") and given a promotional package and access to further data about the Debtors.

13. The Trustee and Orse have been engaged in discussions with TMS West Coast, Inc., ("*Buyer*") since a short time after the Trustee's appointment in the Berg Case and eventually reached agreement on the terms of an Asset Purchase Agreement (the "*APA*"), attached as Exhibit A. The APA provides that consideration for the Acquired Assets is cash at Closing to Debtors of $2,750,000 (the "*Purchase Price*").

14. Based on the Trustee's prepetition sale efforts, and contacts with potentially interested parties, the Trustee believes that the Purchase Price is fair and reasonable and is the highest and best offer received to date. In order to be in a position to sell OCW as a going concern, it was necessary to obtain authority to use cash collateral of Commerce for its operations, which Commerce has been willing to agree to, upon the terms contained in the Cash Collateral Order [Dkt

---

[2] The Meridian Fund cases have been consolidated for administration under Case No. 10-17952 in the above-

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 4
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

#247] (and a hearing to consider approval of this use of cash collateral on more than an interim basis is scheduled to be heard on December 7, 2010). Current financial and cash flow issues dictate that a sale be consummated quickly to ensure the value of the Debtors' assets is preserved. Indeed, absent an expeditious sale or an immediate substantial increase in off-season business, the value of the Debtors as a going concern will be placed in severe jeopardy and the Debtors may well be forced to liquidate.

## II. SUMMARY OF TERMS OF PROPOSED SALE

The following is a summary of some of the material terms of the proposed sale ("***Proposed Asset Sale***") as set forth in the APA:[3]

1. **Assets to be Purchased.** The assets to be purchased (the "***Acquired Assets***") include substantially all of OCW's assets and MTR's "Sightline Tours of Canada" business including without limitation all of their rights, title, privileges, benefits and interests in and to:

(a) Inventory. All inventories of parts or other equipment, which are used or held for use by OCW or MTR with respect to the Sightline Tours Property, together with all rights of Seller Entities against suppliers of such inventories (the "***Inventory***");

(b) Tangible Personal Property. All furniture, fixtures, equipment, parts, machinery and other tangible personal property (other than Inventory) of OCW or MTR with respect to the Sightline Tours Property, including the tangible personal property such as all computers and software, and personal property related thereto, including all computer racks, cables and racks listed on Schedule 2.1(b) (the "***Tangible Personal Property***");

(c) Personal Property Leases. The leases or subleases of Tangible Personal Property as to which OCW or MTR with respect to the Sightline Tours Property is the lessee or sublessee, together with any options to purchase the underlying property (the leases and subleases are

---

captioned Court.

[3] This description of the terms of the APA is intended solely to provide the Court and interested parties with an overview of the significant terms the APA. The Court and interested parties are respectfully referred to the APA for the complete terms of the Proposed Asset Sale. In the event of a conflict between the terms included in this overview and the APA contained herein and the APA, the APA shall govern. Capitalized terms not defined in this Motion have the meanings given in the APA.

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 5
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
**1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028**
**Telephone (206) 223-1313, Facsimile (206) 682-7100**

collectively referred to herein as the "***Personal Property Leases***"), but only if such leases or subleases are designated by Purchaser as Assumed Executory Contracts;

        (d)    <u>Client List</u>.  OCW or MTR with respect to the Sightline Tours Property current and prospective Customer lists;

        (e)    <u>Intangible Personal Property</u>.  All Intellectual Property of OCW or MTR with respect to the Sightline Tours Property (including Seller Entities' goodwill therein) and all warranties, rights, privileges, claims, causes of action and options relating or pertaining to the Acquired Assets or the Seller Entities' Business, including the name "OC&W", the business processes and practices of Seller Entities, together with any Intellectual Property which would be considered an Assumed Executory Contract;

        (f)    <u>Permits</u>.  All licenses, permits, certificates, authorizations and approvals issued by any Governmental Authority, including applications therefor (collectively, "***Permits***");

        (g)    <u>Books and Records</u>.  All books and records used or held for use in the conduct of the Seller Entities' Business or otherwise relating to the Acquired Assets, other than the minute books, charter documents, stock transfer books and records, and corporate seal of Seller Entities;

        (h)    <u>Deposits</u>.  All prepaid assets and deposits, security deposits, deposits with creditors and other deposits of any kind whatsoever;

        (i)    <u>Contracts</u>.  All Existing Contracts which are designated by Purchaser as Assumed Executory Contracts;

        (j)    <u>Real Property Leases</u>.  The leases of real property as to which OCW or MTR with respect to the Sightline Tours Property is the lessee (collectively the "***Office Lease***"); but only if such leases are designated by Purchaser as Assumed Executory Contracts;

        (k)    <u>Motor Coaches</u>.  The motor vehicles identified on <u>Schedule 2.1(l)</u> owned by OCW.  <u>Schedule 2.1(l)</u> shall identify, among other things, the asset number, type, make, model, year, state of registration, and the vehicle identification number of each motor vehicle owned by OCW; and

        (l)    <u>Other Assets</u>.  The assets set forth on <u>Schedule 2.1(m)</u>.

    2.    **Consideration.**  The purchase price for the Acquired Assets shall consist of the Purchase Price, described above.

    3.    **Assumed Executory Contracts.**  Pursuant to Section 2.2 of the APA, within 10 days of execution of the APA the Buyer shall provide Debtors with written notice of which Existing Contracts it intends to assume as Assumed Executory Contracts at Closing. Upon receipt of Buyer's

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 6
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
**1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028**
**Telephone (206) 223-1313, Facsimile (206) 682-7100**

written disclosure of the Assumed Executory Contracts, Debtors shall file a motion that such contracts be assumed and assigned by order of the Court on the date that the Court approves a final sale of the Acquired Assets to the Buyer. Any such order assuming the Assumed Executory Contracts shall be conditioned upon Closing of the sale to a Successful Bidder desiring an assignment of the Assumed Executory Contracts.

4. **Cure Costs.** As described in Section 2.2(a) of the APA, the amount determined to be necessary to cure the Debtors' pre-Closing obligations shall be paid at closing in order to allow the Assumed Executory Contracts to be assigned to the Buyer. If the Debtors do not have the ability to pay the Cure Amounts, the Buyer has the right to pay the Cure Amounts and deduct the amount of such payment(s) from the Purchase Price.

5. **Rejection of Contracts.** With respect to any Existing Contracts which are not Assumed Executory Contracts (the "*Excluded Contracts*") which the Buyer informs the Debtors in writing it requires be rejected as a condition of the sale no later than 10 days after execution of the APA, Debtors shall file a motion for rejection of such contracts that such contracts be rejected by order of the Court on the date that the Court approves a final sale of the Acquired Assets to the Buyer. Any such order rejecting Excluded Contracts shall be conditioned upon Closing of the sale to a Successful Bidder desiring the rejection of the Excluded Contracts.

6. **Conditions.** Debtors and Buyer's obligations to consummate the transactions contemplated in the APA are subject to satisfaction of the conditions set forth in Articles VII and VIII of the APA, respectively. Consummation of the sale under the APA is conditioned upon, *inter alia,* entry of the Bidding Procedures Order (being filed concurrently herewith) and Sale Order, as defined below in Section III. and attached hereto as Exhibit B.

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 7
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

7. **Higher and Better Offers.** The APA is subject to the submission by third parties of higher or better offers as set forth in the Bidding Procedures Order.

### III. PROPOSED SALE PROCEDURES

**1. The Bidding Procedures and Break Up Fee**

The Debtors and Buyer recognize that the sale of the Acquired Assets as contemplated by the APA is subject to Debtors' receipt of higher and better offers. Therefore, Debtors seek authority to implement certain procedures to ensure that their bankruptcy estates will obtain the best return possible. The Debtors thus request that the Court enter a Bidding Procedures Order in the form being filed concurrently herewith, approving the following bidding procedures (the "*Bidding Procedures*") to be employed with respect to the Proposed Asset Sale.

The Proposed Asset Sale is subject to competitive bidding as set forth herein and approval by the Court at a hearing under Sections 363 and 365 of the Bankruptcy Code (the "*Sale Hearing*"). The following alternative bid provisions and related bid protections are designed to compensate Buyer for its efforts and agreements to date and the concomitant benefits conferred upon Debtors, and to facilitate a full and fair process designed to maximize the value of the Acquired Assets for the benefit of Debtors' stakeholders**:**[4]

**2. Designation of Stalking Horse Bidder.**

    a.    Debtors have designated the bid of Buyer ("*Stalking Horse Bidder*") as the "stalking horse" bid ("*Stalking Horse Bid*"). As the Stalking Horse Bidder, Buyer shall, upon entry of the Bidding Procedures Order, be entitled to the Break-Up Fee (as defined below) and other standard stalking horse protections as discussed below. **For purposes of these procedures, the Stalking Horse Bidder's deposit requirement is $100,000, which the Debtors' acknowledge they have received and such funds are currently on deposit** in an escrow account designated by Debtors ("*Escrow Account*").

---

[4] Terms not otherwise defined in this Section III shall have the meanings ascribed to such terms in the Bidding Procedures. This summary of the Bidding Procedures terms is meant only as a summary of such terms and to the extent there is a conflict between this summary and the terms of the Bidding Procedures, the Bidding Procedures shall govern.

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 8
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

b. The obligation of Buyer to perform under the APA is conditioned on, among other things, the entry of the Bidding Procedures Order by the Bankruptcy Court approving the Bidding Procedures and the Break-Up Fee.

**3. Auction Process.**

a. <u>Auction Date</u>. The auction shall take place on two Business Days prior to the day scheduled for the hearing on the Sale Motion at the offices of Karr Tuttle Campbell, 1201 Third Ave., #2900, Seattle, Washington 98101, counsel for the Debtors at 10:00 a.m. PST, and noticed to all prospective bidders. To be eligible to participate in the auction, all Qualified Bidders or their designated agent must appear in person at this address.

b. <u>Qualifications to Bid.</u> Only qualified bidders (as described below) shall be allowed to participate in the auction. Purchaser shall be a Qualified Bidder for all purposes hereunder. To become a "**Qualified Bidder**," each prospective bidder shall, on or before 5:00 p.m. PST on the Business Day that is Ten (10) Business Days prior to the day scheduled for the hearing on the Sale Motion deliver (i) a good faith deposit in the amount of $100,000 in cash into the Escrow Account and (ii) a binding letter agreement to George S. Treperinas, Karr Tuttle Campbell, 1201 Third Ave., #2900, Seattle, Washington 98101 (Email: gtreperinas@karrtuttle.com or mmunhall@karrtuttle.com; Fax: (206) 682-7100), counsel for the Debtors, which contains the following:

(1) **a binding offer to acquire the Acquired Assets for an amount that is at least $175,000 more than the aggregate value of the Opening Bid** (as defined below) ("*Over Bid*");

(2) evidence to the reasonably satisfaction of the Debtors of such Qualified Bidder's financial ability to (a) fully and timely perform if it is declared to be the Successful Bidder, and (b) provide adequate assurance of future performance of all contracts to be assigned and any post-closing investments into the Business;

(3) disclosure of any connections or agreements with Debtors and/or any officer, director or equity security holder of Debtors; and

(4) an agreement to accept and abide by the terms, conditions and procedures set forth herein.

If such bidder contemplates making a bid on terms different than those agreed to by Purchaser in the APA, such bidder shall submit with its letter agreement (a) a detailed description of the differences, and (b) a proposed form of asset purchase agreement marked to show the differences between its proposed asset purchase agreement and the APA; provided that a Qualified Bidder shall not be permitted to vary the terms of the APA in any

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 9
#777963 v1/ 43836-001

*Law Offices*
K ARR T UTTLE C AMPBELL
*A Professional Service Corporation*
**1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100**

way that could nullify, modify, impair or otherwise affect the requirements set forth in (1) through (4) above.

c.  Counsel for the Debtors shall promptly provide copies of any bids that he receives to the Stalking Horse Bidder and to any Official Creditor Committees appointed in the Berg Case or in any of the Seller Entities' respective bankruptcy cases. Any party in interest (including the Stalking Horse Bidder) shall have standing to challenge any prospective bidder's compliance with these qualification requirements. Any dispute regarding a prospective bidder's compliance with these qualification requirements shall be resolved by the Bankruptcy Court.

d.  The Stalking Horse Bid shall be considered the opening bid ("*Opening Bid*") at the Auction. For all purposes of these bidding procedures and the Auction contemplated herein, including, without, limitation, the determination of the Successful Bidder, the Opening Bid shall be valued at an amount equal to the sum of Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000) cash at closing.

e.  The highest Over Bid submitted by a Qualified Bidder shall be the initial over-bid at the Auction ("*Initial Over-Bid*"). **Subsequent over-bids ("*Subsequent Over-Bids*") shall be in increments of not less than $75,000 higher than the immediately preceding bid**. The Initial Over-Bid and Subsequent Over-Bids shall be on substantially the same or better terms and conditions, taken as a whole, as those set forth in the Stalking Horse Bid. In determining the amount of any Subsequent Over-Bid submitted by the Stalking Horse Bidder, Seller Entities shall take into account, and the Stalking Horse Bidder shall be entitled to a credit equal to, the amount of the Break-Up Fee.

f.  All bids shall be made in the presence of other bidders. Seller Entities and Qualified Bidders shall have the right to request reasonable breaks during the pendency of the Auction, with which reasonable requests the Seller Entities shall comply.

g.  Upon the conclusion of the bidding, Seller Entities shall announce their determination as to which bidder has submitted the highest and best bid ("*Successful Bid*"), and such bidder shall be declared the successful bidder ("*Successful Bidder*"). The Successful Bid, as determined by Seller Entities in accordance with these Bidding Procedures, shall be submitted to the Bankruptcy Court for approval at the Sale Hearing. Within two (2) business days of the declaration of the Successful Bidder, the deposits of all unsuccessful bidders shall be refunded with any accrued interest, except as to any bidders ("*Back-up Bidders*") which wish their last bid to remain in consideration as a back-up to the Successful Bid ("*Back-up Bids*"). Any party wishing to have its last bid considered as a Back-up Bid shall provide the Seller Entities with a written request for such treatment no later than one (1) business day of Seller Entities' declaration of the Successful Bidder.

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 10
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
**1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028**
**Telephone (206) 223-1313, Facsimile (206) 682-7100**

h. The transaction evidenced by the Successful Bid shall close not later than 30 days following the entry of the Sale Order ("***Outside Closing Date***") at which time the Successful Bidder shall pay the Successful Bid amount less the amount of the deposit to the Seller Entities on the Closing Date into the Escrow Account; provided, however, if the Stalking Horse Bidder is declared the Successful Bidder such date may be extended pursuant to the terms of the APA executed by the Stalking Horse Bidder.

i. The Successful Bidder shall, at its expense, obtain all necessary governmental licenses, permits and approvals necessary to the consummation of its proposed transaction (provided, however, that this provision does not change any provision of the APA or any bid regarding allocation of responsibility to pay taxes of Seller Entities).

j. In the event Purchaser is not the Successful Bidder and Seller consummate an Alternative Transaction (not including as a result of the due diligence condition being unsatisfied under Section 8.3 of the APA), Purchaser shall be entitled to receive from Seller' bankruptcy estate upon the consummation of such Alternative Transaction a cash break-up fee payment in the amount of up to $100,000 of Purchaser's reasonable and actual expenses incurred in connection with the proposed transactions contemplated by the APA (the "***Break-Up Fee***") as approved by order of the Bankruptcy Court. The Break-Up Fee shall be paid at the closing of the Alternative Transaction and shall be paid concurrently or ahead of any other distributions or payments to any Seller Entities contemplated in connection with such Alternative Transaction by the Successful Bidder. The Break-Up Fee shall constitute an administrative expense of Seller Entities under Sections 503(b) and 507(a)(1) of the Bankruptcy Code. If Purchaser is the Successful Bidder and Purchaser breaches its obligations under the APA without having its performance excused under the terms of the APA, it shall not be entitled to receive the Break-Up Fee if a sale of some or all of the Acquired Assets is closed with another party.

k. In the event a bidder is declared to be the Successful Bidder and such bidder fails to timely perform any of its obligations as set forth above or pursuant to the Bankruptcy Court approved definitive agreements, such declared Successful Bidder shall forfeit all deposits made to the extent provided in such definitive agreements or for failure to enter into such definitive agreement if a bidder other than the Purchaser without regard to Seller Entities' ultimate damages occasioned by such failure; such deposits shall not constitute liquidated damages; and, notwithstanding the foregoing, Seller Entities and the bankruptcy estates shall retain all rights, remedies, claims, counterclaims, and defenses, including the right to seek equitable or injunctive relief. In such an event the Seller Entities shall be free to treat the next highest and best bid received as the Successful Bid without further Court approval.

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 11
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
**1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028**
**Telephone (206) 223-1313, Facsimile (206) 682-7100**

l.  In the event that the Successful Bidder fails to close the transaction for any reason, Seller Entities shall announce their determination as to which Back-up Bidder has submitted the highest and best back-up Bid ("***Successful Back-up Bid***"). The party making the Successful Back-up Bid shall then be deemed the Successful Bidder and shall close the transaction not later than 30 days following the determination of the Successful Back-up Bid.

m.  Seller Entities shall give not less than twenty-four (24) days written notice to all parties in interest in the Berg Case and their respective bankruptcy cases, including all Persons which have asserted liens on or security interests in any of the Acquired Assets, all non-debtor parties to the Assumed Executory Contracts and all known prospective bidders of the date, time and location of the Sale Hearing, unless the Bankruptcy Court enters an order allowing the Sale Hearing to proceed on less notice.

n.  In the event Seller Entities are unable to obtain Court approval of the Sale Motion, the sole remedy of any bidder shall be of the return of its deposit except, with respect to Purchaser, as otherwise provided in the APA with respect to the Break-Up Fee.

o.  All bids shall be all cash as to amounts payable for the Acquired Assets.

The proposed Bidding Procedures are in the best interests of Debtors, their creditors, and their estates. The Bidding Procedures are designed to strike a balance between inviting competing bids and enabling Debtors to close a sale with Buyer within a reasonable time frame. The Bidding Procedures thus are fair, reasonable and necessary to promote the highest and best sale price, without imposing undue obstacles to the competitive bid process. Moreover, debtors often employ bidding protections in order to encourage the making of an original offer subject to higher and/or better offers and ultimately to increase value for the estate.

Here, the Break-Up Fee is an integral part of Buyer's offer. In fact, Buyer's offer to purchase the Acquired Assets was – and remains – predicated and conditioned upon, inter alia, this Court's approval of the Break-Up Fee. As such, the assurance of the Break-Up Fee has "promoted more competitive bidding" because it induced a bid from Buyer, which is higher and better than any other bids received by the Debtors, that otherwise might not have been made. Debtors submit that

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 12
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
**1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028**
**Telephone (206) 223-1313, Facsimile (206) 682-7100**

Buyer should be reasonably reimbursed for its willingness to assume the role of the "stalking horse" as all parties willing to serve in such role are also requesting break-up fees of similar magnitude. Moreover, Buyer's offer (including the Break-Up Fee) is also likely to serve as a catalyst to higher bids. Accordingly, Debtors respectfully submit that this Court should authorize and approve the Bidding Procedures, including the Break-Up Fee.

## IV. LEGAL ANALYSIS

**1. Conducting a Public Auction Pursuant to the Bidding Procedures Is in the Best Interests of the Estate and Its Creditors**

By this Motion, Debtors seek approval of the Proposed Asset Sale, free and clear of liens and encumbrances, as further detailed above and in the APA, subject to higher or better offers.

**(a) Bankruptcy Code § 363.** Section 363(b) of the Bankruptcy Code authorizes a debtor to sell its assets outside of the ordinary course of business. A debtor must show that each of the following elements has been met: (i) a sound business reason exists for the proposed transaction; (ii) the sale has been proposed in good faith; (iii) the sale price is fair and reasonable; and (iv) accurate and reasonable notice has been provided of the transaction.[5] Here, the proposed sale of the Acquired Assets pursuant to the APA meets each of these four factors.

**(b) The Proposed Sale Is Supported by Sound Business Reasons.** Based upon their analysis of their existing and future business prospects, the Debtors have concluded that, given their current situation and the absence of a source of capital for investing in long-term operations, the Proposed Asset Sale represents the only viable way to maximize the value of Debtors' estates for the benefit of all creditors.

---

[5] *In re Country Manor of Kenton, Inc.*, 172 B.R. 217, 220-21 (Bankr. N.D. Ohio 1994); *In re Stroud Ford, Inc.*, 163 B.R. 730 (Bankr. M.D. Pa. 1993); *In re Plabell Rubber Prods., Inc.*, 149 B.R. 475, 479 (Bankr. N.D. Ohio 1992); *In re George Walsh Chevrolet, Inc.*, 118 B.R. 99, 102 (Bankr. E.D. Mo. 1990).

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 13
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See*, *e.g.*, *Four B. Corp. v. Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (stating that, in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the Debtors' duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."). To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and are appropriate in the context of bankruptcy sales. *See In re Integrated Res., Inc.*, 147 B.R. at 659 (sales procedures should "encourage bidding and maximize the value of the Debtors' assets").

Here, the proposed Bidding Procedures will allow and encourage interested parties to submit competing bids in an Auction, thereby maximizing the value that the Debtors will receive for their assets. The Debtors believe that the Auction process will allow them to determine the highest and best price possible for their assets. Without a prompt sale, the value of the Debtors as a going concern will significantly diminish because of the Debtors' cash flow difficulties.

The Debtors further submit that the Proposed Asset Sale will preserve the substantial goodwill of their businesses, maintain valuable relationships with their customers, preserve jobs, and avoid a liquidation sale of Debtors' assets at severely depressed, "fire-sale" prices. Thus, Debtors believe that the Proposed Asset Sale will realize the most cash possible for Debtors' estate and creditors.

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 14
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

**(c)  The Sale has Been Proposed in Good Faith.**  "The requirement that a Buyer act in good faith … speaks to the integrity of his conduct in the course of the sale proceedings." *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).  "Typically, the misconduct that would destroy a Buyer's good faith status at a judicial sale involves fraud, collusion between the Buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id*.

Here, the APA is the result of protracted, arm's length negotiations between Debtors and Buyer, and their respective advisors.  Buyer thus is a good faith Buyer within the meaning of Section 363(m) of the Bankruptcy Code and should be entitled to all of the protections thereof.

Additionally, the sale of the Acquired Assets is subject to higher or better offers and Debtors intend to provide notice of the Proposed Asset Sale to all potential bidders as more fully discussed below.  Finally, Debtors have fully disclosed, and are requesting herein the Court's approval of, all of the terms and conditions of the Proposed Asset Sale, notice and bidding procedures.  Accordingly, the sale of the Acquired Assets has been proposed, and is, in good faith.

**(d)  The Purchase Price is Fair and Reasonable.**  Since the appointment of the Trustee for the Berg Case, and her control of the Debtors, she and her advisors have sought higher or better offers for the Debtors' assets.  Based upon those efforts, Debtors believe that the Purchase Price is fair and reasonable, is the highest and best offer received to date for the Acquired Assets, and that the likely alternative to the Proposed Asset Sale is a forced liquidation, with a resultant loss of substantial value to the Debtors' estates.

Further, the Debtors submit that the payment of the Break-Up Fee in the event of an Alternative Transaction is fair and reasonable.  Buyer has incurred and will continue to incur costs in

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 15
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

continuing to make its offer available to Debtors. If another bidder appears and pays substantially more than Buyer's offer, the Debtors will reap the benefits of Buyer's first offer allowing for a higher subsequent offer. Indeed, courts have recognized that such fees are often a key component to significant sales conducted under section 363 of the Bankruptcy Code. *See In re Integrated Res., Inc.*, 147 B.R. at 659-60 ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets ... In fact, because the ... corporation ha[s] a duty to encourage bidding, break-up fees can be necessary to discharge [such] duties to maximize values."). Here, the Break-Up Fee reasonably relates to Buyer's "risk, effort and expenses ...", *In re Integrated Res., Inc.*, 147 B.R. at 662, was the result of arms-length negotiations, *In re 955 5th Avenue Associates*, 96 B.R. 24 (Bankr. S.D.N.Y. 1989) and encourages bidding. *Id.* at 28. Thus, the Break-Up Fee should be approved and allowed in the event of an Alternative Transaction.

**(e) The Requirements of 11 U.S.C. § 363(f).** Section 363(f) of the Bankruptcy Code provides:

(f) The Trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 16
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

First, the Claims Bar Date set for filing proofs of claim in this case has not been set, and as of this date the aggregate amount of secured claims for all of the Debtors totals under $750,000. All approved secured claims will be paid in full out of proceeds from the Proposed Asset Sale. To the extent that there are additional claims or amounts due and secured by the Acquired Assets, any liens on such assets shall also attach to the proceeds from the Proposed Asset Sale.

Thus, the Debtors submit that the transfer of the Acquired Assets free and clear of any liens, claims, interests, and encumbrances satisfies the statutory prerequisites of Section 363(f) of the Bankruptcy Code. Accordingly, Debtors seek the entry of a Sale Order authorizing the sale of the Acquired Assets pursuant to Section 363.

**2.    Assumption and Assignment Contracts and Leases Pursuant to 11 U.S.C. § 365**

Section 365(a) of the Bankruptcy Code governs assumption of unexpired leases and other executory contracts and provides that, "[t]he trustee, subject to the court's approval, may assume or reject any executory contracts or unexpired lease of Debtor."

**Section 365(f) of the Bankruptcy Code provides, in pertinent part, that:**

>    (2)    The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
>       (A)    the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
>       (B)    adequate assurance of future performance by the assignee of such contact or lease is provided, whether or not there has been a default in such a contract or lease.

11 U.S.C. § 365(f)(2).

The Debtors' proposed assumption and assignment of the Assumed Executory Contracts (to be designated by Buyer and separately noted for hearing) is a proper exercise of Debtors' business judgment as part of an integral component of this negotiated Proposed Asset Sale. Moreover the

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 17
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

contracts to be assumed will avoid rejection damages that would likely dilute amounts to ultimately go to the class of unsecured creditors. Additionally, Buyer has represented that it is a competent, financially stable assignee. Therefore, it is respectfully submitted that Debtors may assume and assign the Assumed Executory Contracts under Section 365 of the Bankruptcy Code. Debtors plan to bring a separate motion to assume and reject contracts which shall be conditioned upon closing of the Proposed Asset Sale, and such motion shall include disclosure of the specific executory contracts to be assumed.

### 3. The Successful Bidder Is Entitled to Good Faith Purchaser Status Pursuant to Section 363(m) of the Bankruptcy Code.

The Debtors request that the Court find that the Successful Bidder is qualified to acquire the Acquired Assets and will do so in good faith within the meaning of Bankruptcy Code section 363(m). Specifically, section 363(m) provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith …." 11 U.S.C. § 363(m). Thus, pursuant to this section, "an appeal of a bankruptcy court's ruling on a foreclosure action [or sale] generally cannot affect the rights of a good faith purchaser of the foreclosed property." *Mann v. Alexander Dawson, Inc.*, 907 F.2d 923, 926 (9th Cir. 1990).

Here, Buyer needs assurance that the purchase of the Acquired Assets will not be subject to future attack by objecting creditors, if any. Such assurance, Debtors believe, is required to generate the maximum purchase price for such assets at the Sale Hearing. Further, these circumstances warrant a finding of good faith on the part of Buyer. Lack of good faith is generally determined by the existence of fraudulent conduct or insider dealing during the sale process. *See In re Exennium,*

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 18
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

*Inc.*, 715 F.2d 1401 (9th Cir. 1983). Here, no such fraudulent conduct or dealings have occurred as of the date of this Sale Motion and will not occur prior to the Sale Hearing. Further, the Proposed Asset Sale here will be the product of an open Auction subject to approval of the Court and to the extent necessary, arm's-length, good faith negotiations between the Debtors, on the one hand, and the Successful Bidder, on the other.

## V. **PROPOSED NOTICE OF PROPOSED ASSET SALE AND PROCEDURES**

In order to assure broad dissemination of notice of the Proposed Asset Sale, the Sale Hearing, and the Bidding Procedures, upon entry of the Bidding Procedures Order, Debtors propose to serve (a) the Bidding Procedures Order and the proposed notice of sale ("*Notice of Sale*") attached hereto as Exhibit B on all creditors, equity holders and prospective bidders (or their counsel) that are known to the Debtors and their advisors and (b) the Notice of Sale and the Sale Motion on (i) the Office of the United States Trustee; (ii) counsel to the Official Committee of Unsecured Creditors (if any); (iii) the local, state and federal taxing authorities for each jurisdiction in which the Acquired Assets are located; (iv) counsel to the Buyer; (v) all parties known to the Debtors to have or to assert any lien, claim, Encumbrance or other interest in any of the Acquired Assets; (vi) the Office of the United States Attorney; (vii) the Attorney General for the State of Washington; and (viii) all persons who have filed requests for notice in these chapter 11 cases.

The Debtors respectfully submit that such notice of the sale of the Acquired Assets satisfies the notice requirements of the applicable Bankruptcy Rules and § 363(b) of the Bankruptcy Code, constitutes good and sufficient notice, and that no other or further notice of this Motion, the Proposed Asset Sale, and the APA is required.

## VI. **CONCLUSION**

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 19
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

| | |
|---|---|
| 1 | Based on the foregoing, the Debtors respectfully request that this Court (i) at the conclusion |
| 2 | of the initial hearing on the Sale Motion, (a) enter the Bidding Procedures Order substantially in the |
| 3 | form filed concurrently herewith, and (b) approve the forms of the Sale/Bidding Procedures and the |
| 4 | Notice of Sale attached as exhibits to the Bidding Procedures Order; (ii) at the conclusion of the |
| 5 | Sale Hearing, enter the Sale Order substantially in the form attached hereto as <u>Exhibit B</u>; and (iii) |
| 6 | grant such additional relief as requested herein. |

DATED this 3rd day of December, 2010.

KARR TUTTLE CAMPBELL

By: */s/ George S. Treperinas*
George S. Treperinas, WSBA #15434
Stephen S. McKay, WSBA #42046
Attorneys for Debtors

MOTION FOR APPROVAL OF: 1. SALE…OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS …FREE AND CLEAR OF LIENS; 2. BIDDING, NOTICE AND SALE PROCEDURES; and 3. ADDITIONAL RELIEF - 20
#777963 v1/ 43836-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100